IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN FRON,<br><br>     Plaintiff,<br><br>     v.<br><br>CITY OF CHICAGO,<br><br>     Defendant. | Case No. 23 CV 15502<br><br>Hon. Georgia N. Alexakis |

### MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Fron brings this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that defendant City of Chicago ("the City") failed to accommodate his sincerely held religious belief when he sought an exemption from the requirement that all City employees receive the COVID-19 vaccine. The City has moved to dismiss Fron's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [18]. For the reasons below, the Court grants the City's motion to dismiss.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

Plaintiff Kevin Fron worked as a detective for the Chicago Police Department ("CPD"). [15] ¶ 6. In September 2021, the City announced that it would require employees to be fully vaccinated against COVID-19 or else submit to twice weekly testing. *Id.* ¶¶ 7–8. According to Fron's complaint, this "soft mandate" allowing for twice-weekly testing eventually turned into a "hard mandate" requiring all employees to receive vaccinations, regardless of whether they underwent testing. *Id.* ¶ 9.

Employees could seek a religious exemption to the City's vaccination requirement by filling out a religious exemption form. *Id.* ¶ 11. The form required an employee to obtain the signature of a religious or spiritual leader attesting to their sincere religious belief. *Id.* ¶ 12. Fron filled out a religious exemption form, where he indicated he is "Christian/Catholic" and said he "objected to the usage of aborted

fetuses in research, testing, and development of vaccines." *Id.* ¶ 13. The City denied this initial request. *Id.* ¶ 14. Fron believes the basis for the denial was that he had not filled out the portion of the form requiring the signature of a spiritual leader. *Id.* ¶ 15. In addition to his failure to fill out this section of the form, Fron also alleges on information and belief that the City denied his request because "as a Catholic, [his] position on COVID-19 vaccination was different from that of his religion's hierarchy." *Id.* ¶ 17.

After the City denied his first exemption request, Fron obtained the signature of a religious leader and submitted an amended exemption request to the City. *Id.* ¶ 19. Fron alleges that this request "was not responded to at all" and that he was "simply told that he needed to vaccinate or be terminated." *Id.* Fron then resigned from his position as a CPD detective. *Id.* ¶ 20. He alleges that he "was forced to resign" because he "would have been terminated unless he was either approved for an accommodation or he vaccinated against COVID-19 against his w[i]ll." *Id.* ¶ 21.

Fron received a right to sue letter from the Equal Employment Opportunity Commission in August 2023. *Id.* ¶ 26. About a month later, he filed this suit. [1]. The City moved to dismiss Fron's complaint for failure to state a claim, [9], and in lieu of responding, Fron filed his amended complaint (from which the Court derives the facts described above). [15]. Now before this Court is the City's motion to dismiss Fron's amended complaint. [17].

## DISCUSSION

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). After Congress enacted Title VII, the EEOC issued a guideline requiring that employers "short of 'undue hardship,' make 'reasonable accommodations' to the religious needs of its employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 66 (1977) (citing 29 C.F.R. § 1605.1(b)). An individual's "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [ ] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To succeed on a Title VII claim for failure to accommodate a religious belief, a plaintiff must establish: "(1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to the employer's attention; and (3) the religious observance or practice was the basis for the employee's discharge or other discriminatory treatment." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (cleaned up). If the plaintiff establishes these elements, the burden shifts to the employer to show that it could not accommodate the employee's religious belief without incurring undue hardship. *Id.* In *Groff v. DeJoy*, 600 U.S. 447, 470 (2023),

4

the Supreme Court recently explained that to demonstrate undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business."

The City advances three reasons why Fron has not stated a claim under Rule 12(b)(6). First, it argues that Fron has not adequately alleged a sincerely held religious belief. Second, it contends that Fron has not experienced an adverse employment action, which is a required element of a Title VII discrimination claim. And third, the City maintains that Fron's Title VII claim is barred by the Illinois Tort Immunity Act, 745 ILCS 10/2-201; 745 ILCS 10/6-104(a).

**A. Fron's Sincerely Held Religious Belief**

The City first argues that Fron's complaint falls short of alleging that he holds a sincerely held religious belief. Because the Court grants the City's motion on the grounds discussed in more detail below, it sees no need to engage in a protracted discussion of the issue. For the time being, however, the Court notes its serious doubts about the merits of the City's position in light of Supreme Court and Seventh Circuit jurisprudence limiting a court's role in this area.

The City contends that Fron's opposition to vaccines is inconsistent with "mainstream Catholic doctrine" and statements made by church leaders such as Pope Francis. [18] at 7–8. But the Seventh Circuit has rejected the contention that a religious practice must be "per se" prohibited by a given religion to warrant Title VII protection. *See Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978); *see also Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 715–16 (1981) ("[T]he

5

guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect."). Moreover, as the Supreme Court has instructed, "it is not for [courts] to say that [an individual's] religious beliefs are mistaken or insubstantial"; the question is whether the belief reflects "an honest conviction." *Burwell v. Hobby Lobby*, 573 U.S. 682, 725 (2014); *see also Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013) (in the context of the Religious Freedom Restoration Act, writing that "[t]he religious objection must be both sincere and religious in nature," but "it is not within the judicial function and judicial competence to inquire whether the adherent has … correctly perceived the commands of his … faith") (quoting *Thomas*, 450 U.S. at 716) (cleaned up). In any case, Fron alleges in his complaint that he was able to secure the signature of a religious leader the second time he applied for an exemption. [15] ¶ 19.

The City also argues that Fron fails to connect his objection to the use of aborted fetuses in the development of vaccines to his Catholic beliefs. Yet "judges are not to undertake to dissect religious beliefs … because [they] are not articulated with the clarity and precision that a more sophisticated person might employ." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024) (quoting *Thomas*, 450 U.S. at 715) (cleaned up). Regardless, at least two other federal appeals courts have found plaintiffs adequately stated a sincerely held religious belief under very similar facts. *See Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901–02 (8th Cir. 2024) (reversing *Kiel v. Mayo Clinic, Health Sys. SE Minn.,* No. CV 22-1319 (JRT/ECW), 2023 WL 5000255 (D. Minn. Aug. 4, 2023)); *Bazinet v. Beth Israel Lahey Health, Inc.*,

6

113 F.4th 9, 16–17 (1st Cir. 2024). In reviewing his complaint, the Court likewise concludes that Fron has plausibly pled a connection between his professed religious belief and his objection to the use of aborted fetal cell lines.

Because the Court bases its holding on the discussion that follows, it reserves any more comprehensive discussion of this issue that might prove necessary should Fron choose to amend his complaint.

### B. Adverse Employment Action

The third prong of the Title VII test requires that Fron show his religious practice was the basis for his "discharge or other discriminatory treatment"—otherwise called an "adverse employment action." *Adeyeye*, 721 F.3d at 449; *see also Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012) ("[W]e have consistently required that the employee have been subjected to an adverse employment action in order to maintain a disparate treatment claim."). To make out an adverse employment action, a plaintiff "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024).

Fron does not allege that the City fired him, placed him on unpaid status, or otherwise took any disciplinary action based on his failure to comply with the vaccination requirement. Instead, he alleges that he resigned from his position after filing his second accommodation request, although before the City made a decision on that request. [15] ¶ 20. Besides his allegedly forced resignation, Fron does not point to any other change in "an identifiable term or condition of [his] employment."

7

*Muldrow*, 601 U.S. at 355. Therefore, to proceed on his Title VII claim, Fron must allege that he was constructively discharged. *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("A constructive discharge constitutes an adverse employment action.").

The Seventh Circuit recognizes two different forms of constructive discharge. The first form occurs when an employee "resigns due to alleged discriminatory harassment." *Id.* The second form, relevant here, occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that [he] will be terminated, and the plaintiff employee resigns." *E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002) (citing *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998)). For both forms of constructive discharge, a plaintiff must "show that his working conditions had become intolerable." *Chapin*, 621 F.3d at 679. Fron attempts to rely on the second form of constructive discharge. He insists that he was faced with a Hobson's choice: "vaccinate or be terminated." [23] at 11. And "[r]ather than be terminated, he resigned." *Id.*; [15] ¶ 20.

In *Carlson v. CSX Transportation, Inc.*, the Seventh Circuit addressed the pleading standard for a Title VII claim based on a constructive discharge. 758 F.3d 819, 830 (7th Cir. 2014). There, plaintiff alleged that once she entered a manager training program, her superiors made the training program "intolerable by belittling her, assigning her extra work, and giving her unjustifiably poor evaluations, leaving her no viable choice but to drop out." *Id.* at 823. The Circuit found it sufficient that plaintiff had alleged "specific examples of poor treatment." *Id.* at 830. Although the

8

Circuit noted that the conditions described in plaintiff's complaint "may not ultimately qualify as intolerable," it could not "say so definitively at the pleading stage, which … is before any evidence is required." *Id.* Courts in this district have relied on *Carlson* to find plaintiffs have adequately pled constructive discharge where they have alleged similar examples of mistreatment. *See, e.g.*, *Brownlee v. Cath. Charities of the Archdiocese of Chi.*, No. 16-CV-00665, 2017 WL 770997, at *5 (N.D. Ill. Feb. 28, 2017) (plaintiff adequately pled constructive discharge by alleging specific incidents of verbal harassment); *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 829 (N.D. Ill. 2021) (allegations that plaintiff "suffered questions about his citizenship and tattoos, an ethnic slur, and unusually strict observation while on the job" were enough to plead constructive discharge); *Armstead v. Valley View Sch. Dist.*, No. 23 CV 3312, 2024 WL 1530472, at *3 (N.D. Ill. Apr. 9, 2024) (plaintiff alleged enough to state constructive discharge where she complained of being harassed and felt unsafe).

In contrast to these cases, Fron has alleged no facts from which the Court can plausibly infer that his work environment was so intolerable that he was forced to resign. Fron's complaint offers almost no information about the circumstances of his resignation. Instead, he alleges that he "was simply told that he needed to vaccinate or be terminated," and, as a result, he "was forced to resign [from] his position." [15] ¶¶ 19–20. "[A] working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'" *Chapin*, 621 F.3d at 679 (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)). Thus, even after drawing all plausible inferences in his favor, Fron's failure to allege any

9

facts suggesting he endured an intolerable work environment falls short. *See Gilhooly v. UBS Sec., LLC*, 772 F. Supp. 2d 914, 917 (N.D. Ill. 2011) (dismissing Title VII claim because allegations did "not give rise to a plausible inference that workplace conditions were so intolerable that a reasonable person would have been compelled to resign").[1]

Finally, Fron insists that the outcome here should be the same as in *Carrero v. City of Chicago* because that case also involved a Title VII claim related to the City's mandatory vaccination policy. No. 23-CV-00650, 2024 WL 22099, at *9 (N.D. Ill. Jan. 2, 2024). But the plaintiff in *Carrero* alleged the City placed him on "no pay status" after denying his accommodation request. *Id.* at *2. Therefore, there was no question that plaintiff experienced at least one adverse employment action. By contrast, Fron's claim fails because he has alleged no adverse employment action.

Because Fron has not experienced an adverse employment action, the Court has no occasion to address the City's alternative argument that the Illinois Tort Immunity Act bars his Title VII claim.

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss without prejudice. [17]. Fron has already amended his complaint once as of right. *See* Fed. R. Civ. P. 15(a)(1). However, if Fron wishes to try again (while still complying

---

[1] The City relatedly argues that it cannot be liable under Title VII because Fron cut off the interactive accommodation process by resigning instead of waiting for the City's determination. *See, e.g.*, [18] at 8–9. The Court sees this argument as part and parcel with the City's argument that Fron has failed to allege an adverse employment action because he resigned and was not terminated.

with his obligations under Federal Rule of Civil Procedure 11), the Court grants him leave to file a second amended complaint by 12/20/24. If he does not do so by 12/20/24, the dismissal will automatically convert to a dismissal with prejudice, and the case will be terminated.

_____
Georgia N. Alexakis
United States District Judge

Date: 11/22/24